## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**WARREN McCOWAN,**

     **Plaintiff,**

**v.**                               **No.  17-cv-00902-MLC-GJF**

**THE CITY OF LAS CRUCES, NEW MEXICO**
**A/K/A LAS CRUCES POLICE DEPARTMENT**
**And MARK MORALEZ,**

     **Defendants.**

## DEFENDANTS' FIRST MOTION FOR SUMMARY JUDGMENT AND FOR QUALIFIED IMMUNITY ON PLAINTIFF'S FEDERAL CLAIMS & MEMORANDUM IN SUPPORT THEREOF

**COME NOW** Defendants, by and through their attorneys of record Jarmie & Associates, and pursuant to FED. R. CIV. P. 56, hereby move for summary judgment on plaintiff's claims under 42 U.S.C. § 1983 on the basis of qualified immunity. Plaintiff has been contacted and opposes this Motion. For their First Motion for Summary Judgment, these Defendants state:

### I.   *Introduction and Background*

On August 21, 2015, shortly after 11:00 p.m., Officer Mark Moralez of the Las Cruces Police Department (LCPD) was driving on Spruce Street in Las Cruces when he noticed plaintiff's vehicle headed towards him with no headlights on. Officer Moralez stopped plaintiff's vehicle. As he spoke with plaintiff, he noticed a 30-pack of beer and an ice chest on the backseat.  He also noticed that plaintiff smelled strongly of alcohol, that his eyes were bloodshot and watery, that his face was flushed, and that his speech was slurred.  Plaintiff admitted to drinking three beers earlier in the evening. Plaintiff consented to perform field sobriety tests, and exhibited numerous signs consistent with intoxication.  As a result of his observations, Officer Moralez placed plaintiff under

arrest for DWI.  Officer Moralez handcuffed plaintiff, placed plaintiff in his patrol unit, and proceeded the short distance to the Las Cruces Police Department.  Upon arrival, plaintiff consented to a breath alcohol test; the results were .08/.09.  Plaintiff was then transported to the Doña Ana County Detention Center. As discussed herein, Officer Moralez acted appropriately under the circumstances, and he did not violate any of plaintiff's clearly established constitutional rights. As such, Defendants are entitled to summary judgment on plaintiff's Section 1983 claims (Counts I to IV of the Complaint).

## II.      *Statement of Undisputed Material Facts*

1.       On August 21, 2015, shortly before midnight, Officer Mark Moralez was driving on Spruce Street in Las Cruces when he noticed plaintiff's vehicle headed towards him with no headlights on. *Affidavit of Mark Moralez*, attached hereto as **Exhibit A**, at ¶ 3; *see also Plaintiff's Second Amended Complaint*, Doc. No. 27 (filed Apr. 11, 2018) (hereinafter "*Complaint*"), at ¶ 6; *Answer to Second Amended Complaint*, Doc. No. 28 (filed May 3, 2018) (hereinafter "*Answer*"), at ¶ 6.

2.       Officer Moralez pulled plaintiff over and then began questioning plaintiff as to whether he had anything to drink that night; plaintiff responded that he had 3 beers to drink that night. *Complaint*, at ¶ 7; *Answer*, at ¶ 7.

3.       As he spoke with plaintiff, Officer Moralez noticed a 30-pack of beer and an ice chest on the backseat. *Moralez Affidavit*, at ¶ 6.  He also noticed that plaintiff smelled strongly of alcohol, that his eyes were bloodshot and watery, that his face was flushed, and that his speech was slurred. *Id.* at ¶ 7.

4.      Officer Moralez then asked plaintiff to participate in field sobriety tests; plaintiff agreed to do so and, subsequently, plaintiff performed field sobriety tests. *Complaint*, at ¶ 8; *Answer*, at ¶ 8.

5.      Officer Moralez observed that plaintiff exhibited numerous signs consistent with intoxication during the field sobriety tests. *Moralez Affidavit*, at ¶ 10.

6.      After Officer Moralez observed plaintiff's performance on the field sobriety tests, he placed plaintiff under arrest for driving while intoxicated and failure to use headlamps. *Complaint*, at ¶ 9; *Answer*, at ¶ 9.

7.      At approximately 12:13 AM, Officer Moralez asked plaintiff to place his hands behind his back for handcuffing; plaintiff did so, and Officer Moralez then handcuffed plaintiff. *Complaint*, at ¶ 10; *Answer*, at ¶ 10; *Moralez Affidavit,* at ¶ 11.

8.      Officer Moralez double locked the handcuffs to prevent them from tightening further.  *Moralez Affidavit*, at ¶ 13.  He also used his finger to check to ensure that the handcuffs were not too tight, and determined they were not.  *Moralez Affidavit*, at ¶ 13.

9.      Officer Moralez then placed plaintiff (who was handcuffed) into the back of his patrol unit. *Complaint*, at ¶ 11; *Answer*, at ¶ 11.

10.     Officer Moralez then took plaintiff into the LCPD police station, less than one (1) mile away, where plaintiff was taken into a holding cell at approximately 12:19 AM.  *Complaint*, at ¶ 13; *Answer*, at ¶ 13; *Moralez Affidavit*, at ¶¶ 14-15.

11.     Plaintiff requested that he not be handcuffed to the bench in the holding cell— however, Officer Moralez informed plaintiff that he was required by policy to handcuff plaintiff

to the bench. *Complaint*, at ¶ 14; *Answer*, at ¶ 14; *see also Moralez Affidavit*, at ¶ 15.

12.     A breathalyzer test was administered to plaintiff at approximately 12:35 AM—the breathalyzer test administered to plaintiff showed a breath alcohol concentration of .08/.09. *See Moralez Affidavit* at ¶ 16; *see also Plaintiff's Responses to Requests for Admissions*, attached hereto as **Exhibit B**, at Request for Admission No. 2.

13.     After Officer Moralez completed the required paperwork, he placed plaintiff is his patrol unit for transport at approximately 1:44 AM. *See Moralez Affidavit*, at ¶ 17.  Plaintiff was transported to the Dona Ana County Detention Center, where he was medically cleared and booked at approximately 2:00 AM on August 22, 2015.  *See Moralez Affidavit*, at ¶ 18.  He did not request medical attention at the detention center.  *See Plaintiff's Answers to Interrogatories*, attached hereto as **Exhibit C,** at Interrogatory No. 11.

### III.     Argument and Authorities

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A "genuine" issue of fact exists where the evidence is such that a reasonable jury could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In response to a motion for summary judgment, the plaintiff may not rely merely on allegations or denials in his own pleading—rather, his response must set out specific facts showing a genuine issue for trial. See generally FED. R. CIV. P. 56(e)(2), (3). The party opposing summary judgment must present specific, admissible facts from which a

rational trier of fact could find in his favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

    A.  <u>Standards for Qualified Immunity</u>

    "Law enforcement officers are, of course, entitled to a presumption that they are immune from lawsuits seeking damages for conduct they undertook in the course of performing their jobs." *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011), *cert. denied*, 133 S.Ct. 645 (2012). In analyzing the qualified immunity defense, this Court must consider if plaintiff's allegations establish a constitutional violation, and if plaintiff has shown a constitutional violation, the Court must determine whether the law was clearly established at the time the alleged violation occurred. *See*, *e.g.*, *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006). To overcome the defense of qualified immunity, a plaintiff must carry the "heavy burden" of showing the violation of a "clearly established" constitutional right (emphasis supplied). *Id.*

    A right is only considered to be clearly established when there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts…have found the law to be as the plaintiff maintains." *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (quotation omitted). The plaintiff must show that the constitutional rights the Defendants allegedly violated were clearly established at the time of the conduct at issue. *See Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). "A reasonable government official cannot necessarily be expected to recognize the significance of a few scattered cases from disparate areas of the law." *Swanson v. Powers*, 937 F.2d 965, 968 (4th Cir. 1991) (internal citations omitted) (quoting *Lum v. Jensen*, 876 F.2d 1385, 1389 (9th Cir. 1989); *Lojuk v. Johnson*, 770 F.2d 619, 628 (7th Cir. 1985)).  Where the general state of the law at the time of the complained-of action "cast[s]

enough shadow on the area," qualified immunity applies. *See Milligan-Hitt v. Bd. of Trustees of Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1233 (10th Cir. 2008) (quoting *Jantz v. Muci*, 976 F.2d 623, 630 (10th Cir. 1992)).

In the present case, plaintiff cannot show that Officer Moralez violated any "clearly established law." The United States Supreme Court has "repeatedly told courts…not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2084 (2011) (citation omitted); *Stanton v. Sims*, 134 S.Ct. 3, 5 (2013); *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014); *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (per curiam); *see also Callahan v. Unified Gov't of Wyandotte Cnty./Kansas City*, 806 F.3d 1022, 1027-28 (10th Cir. 2015). In conducting this analysis, this Court must "define the clearly established right at issue on the basis of the *specific context* of the case" (emphasis supplied). *Pompeo v. Bd. of Regents of the Univ. of New Mexico*, 852 F.3d 973, 981 (10th Cir. 2017) (quoting *Tolan*, 134 S.Ct. at 1866); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001) (the "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition").

For purposes of qualified immunity, the relevant "clearly established law" must be "particularized" to the facts of the case. *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (per curiam) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *cf. Pyle v. Woods*, 874 F.3d 1257, 1263-64 (10th Cir. 2017). Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity...into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *White*, 137 S.Ct. at 552 (quoting *Anderson*, 483 U.S. at 639). In the seventeen months since it decided *White*, the Supreme Court, as well as the Tenth Circuit, have repeatedly

reaffirmed and applied this "particularity" or "specificity" requirement. *See Ziglar v. Abbasi*, 137 S.Ct. 1843, 186-67 (2017); *D.C. v. Wesby*, 138 S.Ct. 577, 590 (2018) ("[t]he clearly established standard…requires a high degree of specificity") (quotations omitted)); *Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018) (per curiam) ("police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue") (quoting *Mullenix*, 136 S.Ct. at 309; *Knopf v. Williams*, 884 F.3d 939, 946-50 (10th Cir. 2018); *Redmond v. Crowther*, 882 F.3d 927, 935, 938-39 (10th Cir. 2018); *McCoy v. Meyers*, 887 F.3d 1034 (10th Cir. 2018); *see also Armijo v. Santa Fe Cnty.*, 2018 WL 3118290, *14 (D.N.M. June 25, 2018) (slip op.).

The burden is on the plaintiff to identify a case where police officers acting under similar circumstances Officer Moralez in the present case were held to have violated the Constitution. *See id.*; *see also Hilliard v. City & Cnty. of Denver*, 930 F.2d 1516, 1518 (10th Cir. 1991); *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017) ("[p]laintiff must present controlling authority that 'squarely governs the case here,'…and that would have put 'beyond debate'…the question" presented in the case) (citations omitted); *Garcia v. Escalante*, 2017 WL 443610, *4 (10th Cir. Feb. 2, 2017) (unpublished) ("[p]laintiff must present controlling authority that 'squarely governs the case here,'…and that would have put 'beyond debate'…the question" presented in the case) (citations omitted); *Malone v. Bd. of Cnty. Comm'rs*, 707 F. App'x 552, 556 (10th Cir. Sep. 8, 2017) (unpublished) ("the parties do not cite, nor could we find, any Supreme Court or Tenth Circuit case that is sufficiently close factually to the circumstances presented here to establish clearly the Fourth Amendment law that applies to our case"). Plaintiffs must establish more than a generalized principle of constitutional law. *Toler v. Troutt*, 631 F. App'x 545, 547 (10th Cir.

Nov. 12, 2015). Indeed, "the Supreme Court has sent out unwritten signals to the lower courts that factually identical or a highly similar factual case is required for the law to be clearly established." *Nelson v. City of Albuquerque*, 283 F.Supp.3d 1048, 1107 n.44 (D.N.M. 2017).

    B.  <u>Defendants are Not Liable Under the Fourth or Fourteenth Amendments</u>

    *1.  Officer Moralez Properly Arrested plaintiff*

First, Officer Moralez unquestionably had probable cause to arrest plaintiff. A warrantless arrest is permissible when an officer "has probable cause to believe that a person committed a crime." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). In evaluating whether the events leading up to an arrest amount to probable cause, the Court asks whether an objectively reasonable officer could conclude that the historical facts at the time of the arrest amount to probable cause. *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)); *see also D.C. v. Wesby*, *supra*, 138 S.Ct. at 586. Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent man to believe that the suspect has committed or was committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964) "[I]n determining whether probable cause exists, the courts must apply the 'totality of circumstances' test." *Brierley v. Schoenfeld*, 781 F.2d 838, 841 n.1 (10th Cir. 1986) (citing *Illinois v. Gates*, 462 U.S. 213 (1983)). "This is an objective standard," and, "[i]mportantly, probable cause does not require facts sufficient for a finding of guilt." *Boydston v. Isom*, 224 F. App'x 810, 814 (10th Cir. 2007). Probable cause "is not a high bar." *Kaley v. United States*, 34 S.Ct. 1090, 1103 (2014); *Wesby*, 138 S.Ct. at 586.

Substantively, the question of whether probable cause existed in light of the factual record does not require proof beyond reasonable doubt, or even a preponderance of the evidence. *See Kerns v. Bader*, *supra*, 663 F.3d at 1188. It does not even require the suspect's guilt to be "more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983); *see also U.S. v. Ludwig*, 641 F.3d 1243, 1252 (10th Cir. 2011). Instead, the relevant question is whether a "substantial probability" existed that the suspect committed the crime, *see Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir.1996), requiring something "more than a bare suspicion." *Ludwig*, 641 F.3d at 1252 (quoting *U.S. v. Garcia*, 179 F.3d 265, 269 (5th Cir.1999)); *see also Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007) ("[p]robable cause only requires a probability of criminal activity, not a prima facie showing of such activity"). Because probable cause for a warrantless arrest is determined in terms of the circumstances confronting the arresting officer at the time of the seizure, "the validity of such an arrest is not undermined by subsequent events in the suspect's criminal prosecution, such as dismissal of charges or acquittal." *Summers v. Utah*, 927 F.2d 1165, 1166-67 (10th Cir. 1991) (citations omitted); *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *Hubbert v. City of Moore*, 923 F.2d 769, 773 (10th Cir. 1991) ("[w]hether the jury eventually convicts the defendant of the crime has no bearing on the question whether the officer had probable cause to make the arrest").

As the Tenth Circuit Court of Appeals has explained, "[e]xcessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment—all depending on where the defendant finds himself in the criminal justice system." *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010). In *Graham v. Connor*, 490 U.S. 386, 395 (1989), the Supreme Court held that

9

"all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." The Fourth Amendment "protects against 'unreasonable searches and seizures' and pertains to the events leading up to and including an arrest of a citizen previously at liberty" when evaluating an excessive force claim. *See Porro*, 624 F.3d at 1325. At the other end of the custodial continuum—that is, when an individual is convicted of a crime—the Tenth Circuit has explained that an excessive force claim must proceed under the Eighth Amendment. *Porro*, 634 F.3d at 1325-26. An arraigned pretrial detainee would bring an excessive force claim under the due process clauses of the Fifth or Fourteenth Amendments. *Id.* at 1326. Whether an excessive force claim arises under the Fourth or Fourteenth Amendment, the plaintiff must show that the force purposely or knowingly used against him was objectively unreasonable. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

In the present case, plaintiff was an arrestee (as opposed to an arraigned pretrial detainee) when he was placed in the back of Officer Moralez's patrol car on August 21, 2015. The gravamen of plaintiff's Complaint is that Officer Moralez used excessive force in placing plaintiff—handcuffed but not seat-belted—into his patrol car, then handcuffed plaintiff to a bench at the LCPD holding cell, and allegedly committed the state law torts of assault and battery while doing so. Consequently, his claims in this case must proceed under the Fourth—not Fourteenth—Amendment to the United States Constitution. *See, e.g.*, *Shaw v. Gravil*, 2016 WL 10267676, *4-*6 (D.N.M. May 23, 2016) (unpublished); *Estate of Smart v. City of Wichita*, __ F.Supp.3d __,

10

2018 WL 3744063, *4 (D. Kan. Aug. 7, 2018) (slip op.) (citing *Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014)); *Youngquist v. Bd. of Cnty. Comm'rs for Curry Cnty.*, 2016 WL 9725196, *4 (D.N.M. Dec. 13, 2016) (unpublished).

The threshold inquiry in any 42 U.S.C. § 1983 suit requires that the Court "identify the specific constitutional right" at issue. *Manuel v. City of Joliet*, 137 S.Ct. 911, 920 (2017) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). After pinpointing that right, the Court still must determine the elements of, and rules associated with, an action seeking damages for its violation. *Manuel*, 137 S.Ct. at 920 (citing *Carey v. Piphus*, 435 U.S. 247, 257-258 (1978)); *see also Albright*, 510 U.S. at 270 n.4 (there must be some "constitutional peg on which to hang" a claim). Where, as here, a constitutional claim is covered by a specific constitutional provision, the claim must be analysed under the standard appropriate to that specific provision. *See U.S. v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *see also Mothershed Bey v. City of Okla. City*, 2017 WL 2455160, *2 (W.D. Okla. June 6, 2017) (unpublished); *cf. Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003) (turning to an analysis of substantive due process in consideration of an excessive force claim only after finding that the Fourth and Eighth Amendments did not apply); *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005). Plaintiff's Section 1983 claims (for excessive force) in this case are governed solely by the Fourth Amendment, not the Fourteenth Amendment.  Consequently, plaintiff's Fourteenth Amendment due process claim (Count II of the Complaint) must be dismissed.

*2.  No Particularized Clearly Established Law Governs This Case*

There is no particularized law—particularly in the Tenth Circuit—which would have put

Office Moralez on notice that his actions on August 21, 2015 might be unconstitutional. It was, of course, perfectly acceptable of Officer Moralez to handcuff plaintiff. *See*, *e.g.*, *Fisher v. City of Las Cruces*, 584 F.3d 888, 893-96 (10th Cir. 2009) (holding that the Fourth Amendment was not violated by a law enforcement officer's decision to handcuff an individual suspected of a petty misdemeanor, reasoning that the Supreme Court has "recognized that handcuffing was an appropriate response to officer-safety concerns even during investigative detentions"); *Calvi v. Knox Cnty.*, 470 F.3d 422, 428 (1st Cir. 2006) (holding that keeping an arrestee in handcuffs while transporting her to a detention facility, based on standard police practice, did not constitute excessive force)); *see also Kain v. Nesbitt*, 156 F.3d 669 (6th Cir.1998)

Certainly, there was no case law in existence as of that date clearly establishing that an arrestee or detainee had a constitutional right to be put in a seatbelt when being transported by a law enforcement officer.  Indeed, the law from across the circuits as of August 2015 pointed in the opposite direction. For example, in *Hughes v. Shestakov*, 2002 WL 1742666 (E.D. Penn. July 22, 2002) (unpublished), *aff'd*, 76 F. App'x 450 (3d Cir. Sep. 30, 2003) (unpublished) the plaintiff (as in the present case) purported to state claims for excessive force and conspiracy to use excessive force in violation of the Fourth and Fourteenth Amendments, alleging that he sustained injuries while being transported to the police station following his arrest. *Hughes*, 2002 WL 1742666, *6. Specifically, he alleged that he was taken on a "rough ride" by the police. *Id.*  Plaintiff contended "that the police actions constituted excessive force, and resulted from the City's policy or custom which allowed such 'rough rides' to take place." *Id.* The District Court granted summary judgment on, *inter alia*, the ground that plaintiff failed to establish the violation of a constitutional right. *Id.*;

*cf. Wiers v. Barnes*, 925 F.Supp. 1079, 1088-89 (D.Del. 1996) (finding that defendant, who had transported plaintiff while handcuffed, was entitled to qualified immunity even if conduct violated the Fourth Amendment, where acts were such that a reasonable officer could have committed them)

Plaintiff's claims in this case are similar to those presented in *Dexter v. Ford Motor Co.*, 92 F. App'x 637 (10th Cir. Feb. 12, 2004) (unpublished). In that case, the plaintiff (Dexter) alleged violations of his constitutional rights after corrections officials failed to place him in a seatbelt during prisoner transport. *Dexter*, 92 F. App'x at 638-39. Dexter was severely injured when the driver lost control of the vehicle, which rolled and ejected Dexter. *Id.* at 638. The Tenth Circuit reversed the order of the district court denying qualified immunity to the corrections officers conducting the transport and affirmed the grant of qualified immunity to the defendant warden. The Tenth Circuit astutely noted that, "[a]s praiseworthy as buckling up may be…failure to seatbelt an inmate does not violate the Constitution," and that plaintiff pleaded, at most, a case of negligence. *Id.* at 643-44.

Relying on, *inter alia*, *Dexter*, the District of Utah ruled in *Brown v. Larsen*, 2014 WL 3573415 (D. Utah July 21, 2014) (unpublished) that the plaintiff had not state a constitutional violation. The plaintiff had gone to the Salt Lake City Justice Center to deal with a traffic violation, but was detained by when the court found that she had an outstanding bench warrant on an unrelated criminal matter. *Brown*, 2014 WL 3573415, *1. The Defendant, Larsen, handcuffed plaintiff behind her back and placed her in a prison transport van to take her to the Salt Lake County Jail, approximately 6.5 miles away. *Id.* Although plaintiff asked to be seatbelted, Larsen

13

refused. *Id.* During the transport, plaintiff was propelled forward against a metal partition, causing injuries to her neck and back. *Id.* The district court concluded that Larsen's failure to seatbelt plaintiff "did not present an obvious and known risk of serious harm rising to the level of a flagrant constitutional violation." *Id.* at *3. "[T]he solitary act of seatbelting or not seatbelting by itself [does] not provide a basis for a constitutional violation." *Id.*; *see also id.* at n.2 (collecting cases). The Tenth Circuit affirmed the dismissal of plaintiff's claims. *Brown v. Larsen*, 653 F. App'x 577 (10th Cir. June 23, 2016) (unpublished). The Court noted that, "[a]s a general matter…a custodian's failure to seatbelt a prisoner does not expose the prisoner to a substantial risk of serious injury." *Brown*, 653 F. App'x at 579.

Other courts also have squarely rejected the claim that a failure to provide a prisoner or detainee with a seatbelt or other restraint violates a constitutional right. *See*, *e.g.*, *Jabbar v. Fischer*, 683 F.3d 54 (2d Cir. 2012) (collecting cases); *Carrasquillo v. City of New York*, 324 F.Supp.2d 428, 437-38 (S.D.N.Y.2004) (granting motion to dismiss where plaintiff was injured when forced to ride handcuffed and was not provided with a seatbelt because "protection from harm is not a constitutionally secured right"); *Richey v. North Atlantic Extradition Services*, 2012 WL 424877 (E.D.Ky. 2012) (unpublished) ("a failure to provide seatbelts does not, by itself, constitute a substantial risk of serious harm rising to the level of a constitutional violation") (citation omitted); *Shaw v. City of Dayton, Ohio*, 183 F.Supp.3d 876, 886-87 (S.D. Ohio 2016) (collecting cases); *see also Spencer v. Knapheide Truck Equipment Co.*, 183 F.3d 902 (8th Cir. 1999) (upholding summary judgment in favor of Board where plaintiff challenged purchase of patrol wagons without restraints and plaintiff was transported with handcuffs behind his back); *Rodriguez v. City of*

*Liberal*, 2013 WL 443414, *2 (D.Kan. Feb. 5, 2013) (unpublished); *Miller v. Callahan*, 2016 WL 6496459, *6 n.3 (E.D. Ark. Oct. 24, 2016) (unpublished) ("[t]he defendants are also entitled to qualified immunity because Miller has failed to show that a reasonable officer should have known transporting inmates in a van without seatbelts violates a clearly established constitutional right") (citing *Prosser v. Ross*, 70 F.3d 1005 (8th Cir. 1995)).

There is also no particularized, clearly established law pertaining to plaintiff's claims arising from Officer Moralez's alleged "reckless" driving while plaintiff was in the patrol car. In *Young v. Dep't of Corrs.*, 2007 WL 2214520 (E.D. Mich. July 27, 2007) (unpublished), the plaintiff alleged that, while he was shackled but not seatbelted in a transport vehicle, the Defendant "drove recklessly at fifteen miles over the speed limit while weaving through traffic." *Young*, 2007 WL 2214520, *1. The vehicle was in an accident as a result of the speeding, and the plaintiff was injured—plaintiff alleged that he would not have been injured had he been wearing a seatbelt. *Id.* The Court found that, even if all plaintiff's allegations were true, plaintiff could not establish that Defendant's conduct amounted to a constitutional violation because the law was not clearly established. *Id.* at *12. Similarly, in *Bowden v. Fauquier*, 2012 WL 5385745 (M.D. Ga. Oct. 5, 2012) (unpublished), the plaintiff was riding in the back seat of a City police car; plaintiff alleged that the Defendant Officer "was driving on the wrong side of the road in excess of eighty miles per hour when the car was involved in a 'head-on' collision." *Bowden*, 2012 WL 5385745, *1. Plaintiff, whose hands were cuffed behind his back and not wearing a seatbelt, alleges he was injured in the accident. *Id.* The Court determined that no constitutional violation occurred with respect to the Officer's failure to restrain plaintiff in a seatbelt and Defendant's alleged reckless

driving—as such, the plaintiff was unable show that qualified immunity should be denied. *Id.* at *4.

In *Rogers v. Orange Cnty. Transit Auth.*, 2014 WL 12628682 (C.D. Cal. June 11, 2014) (unpublished), an excessive force and due process case, the Defendants argued that "there [wa]s no clear precedent putting bus drivers on notice that driving recklessly and/or aggressively can give rise to constitutional liability." *Rogers*, 2014 WL 12628682, at *5. Noting the Supreme Court's admonition that "clearly established" rights must be identified at a very particularized level, the Court found that "the appropriate question [wa]s not whether individuals have the constitutional right to be free from excessive force by state actors but whether individuals have the right to be free from reckless driving by public bus operators while traveling on public streets." *Id.* at *6. Because there was no binding or on-point Supreme Court or Circuit precedent that would have put the driver "on notice that he could face potential constitutional liability under the Fourth and Fourteenth Amendments for driving recklessly," the driver was entitled to qualified immunity. *Id.*

Other federal decisions are in accord. *See, e.g.*, *Williams v. City of New York*, 2005 WL 2862007, (S.D.N.Y. Nov.1, 2005) (unpublished) (granting motion to dismiss where plaintiff was injured on a bus on two different occasions where the driver was reckless and where the bus lacked seat belts, relying on the reasoning in *Carrasquillo* that vehicular accidents that expose plaintiff to a risk of injury cannot supply deliberate indifference); *Seelye v. Fisher*, 2007 WL 951604 (D.Minn. Mar. 29, 2007) (unpublished) (granting summary judgment in favor of defendant where plaintiff was handcuffed, waist-chained and leg-ironed and was not placed in a seat belt during

transportation and where driver's "reckless" driving aggravated his pre-existing back and neck injuries where there was no allegation, other than a conclusory one, that the defendant drove in a reckless manner); *Riddick v. Reiger*, 2006 WL 2644924 (M.D.Fla. Sept.14, 2006) (unpublished) (granting motion to dismiss where plaintiff was injured when officer drove recklessly and did not buckle plaintiff's seat belt; citing with approval *Dexter v. Ford Motor Co.*'s reasoning that the "connection between a failure to seatbelt and the risk of serious injury, even if arguable under state tort law, is insufficient for purposes of constitutional analysis").

Moreover, there is no clearly established law pertaining to plaintiff's claims arising out of his having been handcuffed to the bench at LCPD. In *Palshook v. Jarrett*, 120 F.Supp.2d 641, (N.D.Ohio 2000), a police officer handcuffed the plaintiff-arrestee to a bench in the holding cell pursuant to written departmental policy. *Palshook*, 120 F.Supp.2d at 656. The Court found that, insofar as plaintiff's claim rested on the fact that he was handcuffed to a bench in a holding cell, there was "no cause of action for excessive force. It may be true that it was unnecessary ... but in the context of placing an individual under arrest, use of handcuffs alone cannot amount to excessive force." *Id.* In *Jackson v. Gatto*, 2014 WL 2743130 (D. Colo. June 17, 2014) (unpublished), the plaintiff alleged that the Defendant "unreasonably detained [her] by incapacitating her by shooting her with a Taser gun and, following her release from emergency treatment…by handcuffing her, taking her to a military police station and handcuffing her to a metal bench for a prolonged period of time." *Jackson*, 2014 WL 2743130, *1. While handcuffed to the bench, plaintiff "cried continually" and "was not allowed to speak directly with her husband or daughter." *Id.* at *6. Plaintiff's contention that she was "kept handcuffed to a bench for about

an hour 'while still suffering the physical effects of the Tasing,' when she 'posed no threat to anyone,' and was denied access to her husband and daughter" did not amount to a constitutional violation. *See id.* at *10. In sum, there is no clearly established law that squarely governs this case—as such, Officer Moralez is entitled to qualified immunity.

C.     <u>Because Officer Moralez Did Not Violate Clearly Established Law, the City Cannot Be Liable for plaintiff's *Monell* Claim</u>

Additionally, to impose liability on the City of Las Cruces under Section 1983, plaintiff must identify a municipal "policy" or a "custom" that caused plaintiff's alleged constitutional injury. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Pembaur v. Cincinnati*, 475 U.S. 469, 479-81 (1986); *Monell v. New York City Dep't of Social Servs*, 436 U.S. 658, 694 (1978); *Pyle v. Woods*, *supra*, 874 F.3d at 1266 (citation omitted). Moreover, the disputed "policy" or "custom" must also be the cause and moving force behind the alleged deprivation of plaintiff's constitutional rights. *Brown*, 520 U.S. at 404. However, absent a showing of constitutional injury, a municipality cannot be liable for damages, regardless of the existence of a policy or custom. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). "A § 1983 suit against a municipality for the actions of its police officers requires proof that (1) an officer committed a constitutional violation and (2) a municipal policy or custom was the moving force behind the constitutional deprivation that occurred." *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1264 (10th Cir. 2008); *see also Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009). "A municipality is not liable for the constitutional violations of its employees simply because such a violation has occurred; a policy or custom must have *actually caused* that violation." *Cordova*, 569 F.3d at 1194 (emphasis supplied). "To establish the causation element,

the challenged policy or practice must be 'closely related to the violation of the plaintiff's federally protected right.'" *Schneider v. City of Grand Junction*, 717 F.3d 760, 770 (10th Cir. 2013) (quoting Martin A. Schwartz, *Section 1983 Litigation Claims & Defenses*, § 7.06[A] (2013)). The plaintiff must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*; *see also Carr v. Castle*, 337 F.3d 1221, 1231 (10th Cir. 2003) (plaintiff failed to meet the casual-linkage test where the allegedly inadequate training of officers could not be said to "have led directly to the use of excessive force").

"A municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *Heller*, 475 U.S. at 799); *see also Clarke v. Sweeney*, 312 F.Supp.2d 277, 303-04 (D. Conn. 2004) ("an underlying constitutional deprivation is a requirement for a *Monell* claim") (collecting cases). A finding of individual liability is necessary for a Court to find a municipality liable for constitutional violations attributable to it. *See Wilson v. Meeks*, 98 F.3d 1247, 1255 (10th Cir. 1996). Where (as here) individual officers are entitled to qualified immunity on the ground that there was no constitutional violation, the grant of qualified immunity precludes municipal liability. *See Hinton*, 997 F.2d at 783 (quoting *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 697 (10th Cir. 1988)); *see also Williams v. Borough of West Chester*, 891 F.2d 458, 467 (3d Cir. 1989) ("[a] municipality may be liable under [S]ection 1983 only if its [officers] violated a plaintiff's civil rights"); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("[b]ecause the district court properly found no underlying constitutional violation, its decision not to address to municipal defendants' liability under *Monell* was entirely correct."); *Whitley v. Hanna*, 726 F.3d

631, 648-49 (5th Cir. 2013) ("All of Whitley's inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation."); *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) ("[t]here can be no liability under *Monell* without an underlying constitutional violation."); *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014) ("But if no constitutional violation occurred in the first place, a *Monell* claim cannot be supported."); *Quintanilla v. City of Downey*, 84 F.3d 353, 356 (9th Cir. 1996) (holding that plaintiff could not recover on Section 1983 claim against city or police chief absent showing that individual arresting officers violated his constitutional rights).

A municipality can only be liable under *Monell* if the violated right is clearly established "because a municipality cannot *deliberately* shirk a constitutional duty unless that duty is clear." *Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 995 (6th Cir. 2017) (emphasis in original) (citing *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 393 (8th Cir. 2007) (en banc)); *see also Hollingsworth v. City of St. Ann*, 800 F.3d 985, 992 (8th Cir. 2015) ("[a]s it was not clearly established in July 2009 that force resulting in only *de minimis* injury could violate the Fourth Amendment, the City did not act with deliberate indifference by failing to train its officers that use of a Taser in these circumstances was impermissible").

Quite simply, "a municipal policymaker cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established." *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 511 (6th Cir. 2012) (quotation omitted); *see also Young v. Cnty. of Fulton*, 160 F.3d 899, 903-04 (2d Cir. 1998); *Szabla*, 486 F.3d at 393; *Townes v. City of New York*, 176 F.3d 138, 143-44 (2d Cir. 1999); *Williamson v. City of Virginia Beach*,

786 F.Supp. 1238, 1264–65 (E.D. Va. 1992) ("[even if] the constitutional rights alleged by plaintiff did exist, the conclusion that they were not clearly established negates the proposition that the city acted with deliberate indifference"), *aff'd*, 991 F.2d 793 (4th Cir. 1993); *Zwalesky v. Manistee Cnty.*, 749 F.Supp. 815, 820 (W.D. Mich. 1990); *Arian v. City of Los Angeles*, 2013 WL 12081081, *4 (C.D. Cal. Apr. 30, 2013) (unpublished) ("even if Officers violated Arian's constitutional rights…they objectively could have believed their conduct was lawful under clearly established Fourth Amendment law…Plaintiffs have failed to raise a triable issue of material fact as to their excessive force claim…Therefore, Plaintiffs' *Monell* claim also fails as a matter of law"); *Sam v. Fort Bend Cnty. Sheriff's Office*, 2014 WL 637137, *7 (S.D. Texas Feb. 18, 2014) (unpublished) ("Fort Bend County cannot be held liable unless an official (1) violated his *clearly established* constitutional rights and (2) the violation resulted from a municipal policy or custom") (emphasis supplied); *Mounce v. Doe*, 2014 WL 2587698, *31 (E.D. La. June 10, 2014) (unpublished) ("[e]ven if defendants had an extractions-only policy, they would be entitled to qualified immunity on plaintiff's *Monell* claim because it was not clearly established at the time of Mounce's incarceration that such a policy was unconstitutional"). Because plaintiff cannot show any violation of his clearly established constitutional rights by Officer Moralez, the City of Las Cruces is entitled to judgment as a matter of law on any *Monell* claim that plaintiff purports to make in this case.

D.   Plaintiff Cannot Maintain his Conspiracy Claims

Finally, plaintiff cannot maintain his civil conspiracy claims in this case. To state a claim for civil conspiracy under 42 U.S.C. § 1983, a plaintiff must "allege *specific* facts showing an

agreement and concerted action amongst the defendants" (emphasis supplied). *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998); *see also Montgomery v. City of Ardmore*, 365 F.3d 926, 939-40 (10th Cir. 2004). The existence of an agreement is the *sine qua non* of conspiracy. *See generally Brooks v. Gaenzle*, 614 F.3d 1213, 1227–28 (10th Cir.2010) (discussing civil conspiracy under 42 U.S.C. §§ 1983 & 1985).

In his Complaint, plaintiff conclusorily alleges that Officer Moralez "and his [unnamed] co-officers conspired and agreed, by their actions and/or omissions, and under the color of law, to deprive Plaintiff of his rights, privileges, and immunities secured by the Constitution of the United States, particularly concerning his Fourth Amendment right to be free from excessive force." *Second Amended Complaint*, Doc. No. 27, *supra*, at ¶ 42. Plaintiff conclusorily alleges that Officer Moralez "had substantial involvement in the conspiracy by his acts and omissions in furtherance of the conspiracy." *Id.* at ¶ 43. However, plaintiff did not allege specific facts showing an agreement and concerted action amongst the defendants," nor did he identify any of the alleged participants in the alleged conspiracy or the manner in which the conspiracy operated. *Montgomery*, 365 F.3d at 940. Plaintiff merely alleged many unlawful acts by Officer Moralez and other unnamed officers and stated, without any specific facts evincing an agreement among the various officers, that they conspired against him. *Id.* As such, plaintiff has failed to establish a civil conspiracy claim. *Id.*; *see also Gunderson v. Uphoff*, 216 F.3d 1087, 2000 WL 854283, *6 (10th Cir. June 28, 2000) (unpublished table decision) (upholding dismissal of plaintiff's Section 1983 civil conspiracy claim where "[p]laintiff merely alleged many unlawful acts by various defendants and stated, without any specific facts evidencing an agreement among the various defendants, that

22

they conspired against him"). And again, because Officer Moralez did not violate any of plaintiff's clearly established constitutional rights, Officer Moralez is entitled to qualified immunity on plaintiff's conspiracy claim. *See*, *e.g.*, *Hunt v. Cent. Consol. Sch. Dist.*, 2016 WL 3574172, *10 (D.N.M. Mar. 23, 2016) (unpublished); *Cunningham v. New Mexico*, 2014 WL 12791236, *12 (D.N.M. May 12, 2014) (unpublished) ("Cunningham has failed to show that Hackett and Ryan violated any clearly established constitutional right, and thus the officers are similarly entitled to qualified immunity for any conspiracy claim under § 1983 tied to other alleged violations").

**WHEREFORE**, Defendants respectfully request that this honorable Court grant them summary judgment on plaintiff's claims as set forth above, and for whatever further relief this Court sees fit.

Respectfully submitted,

 /s/Mark D. Standridge
Mark D. Standridge
Jarmie & Associates
*Attorneys for Defendants*
P.O. Box 344
Las Cruces, NM 88004
(575) 526-3338
Fax: (575) 526-6791
mstandridge@jarmielaw.com